## FIELD *vs.* CHASE.

It is settled that the provision in charter parties, allowing a certain number of *running days* for discharging and loading, is a positive stipulation by the freighter that he will, on arriving at the port specified, load and unload within the time mentioned; and if detained longer, it shall be counted his own delay.

Accordingly, where A. chartered a ship for a voyage from Boston to Havana, "twenty-five *running* days to be allowed for discharging and loading in Cuba; and if more was used, $30 per day demurrage to be paid by" A.; *it was held* no defence against payment of the demurrage, that the ship arrived at Cuba during the Easter holidays, and that, according to the usage of the place, the custom house was closed and the ship could not be entered nor permission had to unload.

Where the loading or unloading is to be within a certain number of *days* generally, or so many *working* days, they do not include Sundays or custom house holidays; otherwise when the words are, as here, *running* days. *Per* COWEN, J.

ERROR to superior court of the city of New York. The case is sufficiently stated in the opinion of the court.

*J. H. Raymond,* for the plaintiff in error.

*J. M. Martin,* for the defendant in error.

*By the Court,* COWEN, J.  The action in the court below was by Field against Chase, to recover money advanced by the former in payment of the disbursements and port charges of the brig "Damascus" at Cuba, pursuant to his stipulation in a charter party. He had chartered the ship of the defendant, who was master and part owner, for a voyage from Boston to Havana and Matanzas, and thence to a port in Europe, &c.; "twenty-five *running* days to be allowed for discharging and loading in Cuba; and if more are used, thirty dollars per day demurrage to be paid by said Field." The defendant retained for several days' demurrage at Havana out of the moneys advanced by the plaintiff as above stated; and the sole question is, whether the brig was delayed at that port under circumstances which rendered the plaintiff accountable. She was detained thirty-four days, and five

days of the demurrage were accounted for by the fact that she reached the port during the Easter holidays, when, according to the usage of the place, the custom-house was closed. The brig, therefore, could not be entered, nor could permission be obtained to unload. The consignee had notice of her arrival immediately. The court below charged the jury that the twenty-five running days commenced on the arrival of the brig in port and notice to the consignee; that the occurrence and continuance of the Easter holidays, the consequent suspension of business at the custom-house, and the delay, from those causes, of the custom-house entry and permit, did not postpone the commencement of the running days allowed for discharging and loading. A verdict was accordingly rendered in favor of the defendant; and the plaintiff sued out a writ of error from this court.

It is impossible to say, from this case, that it was the business of the defendant to see that the brig was entered at the custom-house. I should rather conclude that this was the business of the consignee. It is settled that this provision for running days, as they are called, is, in effect, a positive stipulation by the freighter that he will, on arriving at the port to which they relate, load and unload within the time mentioned; and that, if detained longer, it shall be counted as his own delay. The legal consequence of such a construction is, in ordinary contracts, extremely well settled. If violated from any cause, even in consequence of inevitable accident, this shall not excuse the party from the payment of damages. The contract is express, not merely implied by law. In this last case he would be excused by the act of God or the enemies of the country. But where it is express, nothing short of the other party's fault will have that effect. The decisions in respect to the stipulation in question will in general be found in harmony with the distinction.

A ship being detained by the crowded state of the docks is one instance. (3 *Chit. Com. Law*, 428, and the books there cited in note (1.) Being blocked up by ice in the Thames is another; though a farther detention for want of clearances in consequence of the custom-house being burnt down,

was allowed to be an excuse on the ground that, to obtain the clearance was shown to be the business of the owner. (*Barret* v. *Dutton*, 4 Camp. 333 ; vide *id.*, 335, note.) So, if the delay be occasioned by the irregular act of the custom-house officers. (*Bessey* v. *Evans, id.*, 131.) So, where the delay arises from the regular course of business at the government office (*Hill* v. *Idle, id.* 327); or even the prohibition of a foreign government. (*Blight* v. *Page*, 3 B. & P., 295, in note.) In all these cases demurrage was allowed ; and in the last, the general distinction which I have noticed was adverted to by Lord Kenyon. He cites Co. Litt.: " That if a man be bound in an obligation to A., conditioned to enfeoff B., a stranger, and B. refuse, the obligation is forfeited; for the obligor has taken it upon him to make the feoffment. The reason of this, he says, is clear. If a man undertake what he can not perform, he shall answer for it to the person with whom he undertakes." To apply the rule to the principal case : Here the plaintiff undertakes to unload and reload in twenty-five days after arriving at the port of Havana ; and if detained more, to pay a per diem of $30. He sets up for excuse that business being suspended during the Easter holidays, he could not enter the brig nor procure a permit to begin the work. He is bound to go farther, and show that the defendant was obliged to obtain those papers; but by a failure on his part, prevented the plaintiff. That he has not done. The cases, or rather dicta, may not be entirely uniform ; but on the balance of authority there can be no doubt; beside its entire accordance with principle and analogy. (3 Chit. Com. Law, 427-8 ; Holt on Ship., 326, 332, 2 Lond. ed.; *Randall* v. *Lynch*, 2 Camp., 352 ; *S. C.* 12 East, 179 ; Kent's Com., 202, 4th ed.; *Barker* v. *Hodgson*, 3 Maul. & Selw., 267 ; McCullock's Com. Dict., *Demurrage.*)

There is a difference, it seems, in respect to this provision of a charter party, depending on the words. Where the loading or unloading is to be within a certain number of *days* generally, or so many *working* days, they do not include Sundays or custom-house holidays ; otherwise where the words are, as here, running days. (Holt on Shipp., 338-9, Lond. ed. of 1824 ; *Cochran* v. *Petberg*, 3 Esp. Rep., 121;

Lawes on Chart. Parties, 131.)  On the former words, the defendandant's case would indeed have been very questionable; on the latter, it is very clear.  The reasoning in *Duff* v. *Van Zandt*, 3 Johns. Cas., 162, is mainly relied on by the counsel for the plaintiff.  But the words there were *working* days.

Judgment affirmed.